May 29, 1979

## 79-38    MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### (1) Conflict of Interest—Financial Interest (18 U.S.C. § 208)—Husband and Wife
### (2) Executive Order No. 11222—Appearance of Conflict of Interest

This is in response to your memorandum of April 18, 1979, asking for our opinion on the conflict of interest questions that will soon be pertinent in relation to the service of Carol T. Foreman as Assistant Secretary of Agriculture for Food and Consumer Services. The questions stem from the pending merger of two large labor unions in one of which her husband is an official. The relevant facts, as we understand them, are summarized below.

The husband, a lawyer by training, has been employed by the Retail Clerks International Union for about 12 years and presently occupies the position of executive assistant to its president. He is also an elected vice president of the union and by virtue of holding that office is a member of its executive board. He receives a salary fixed by the president for his services as executive assistant but no additional compensation for his duties as vice president and board member.

The Retail Clerks Union will soon merge with the Amalgamated Meat Cutters and Butcher Workmen of North America. It appears that the president of the Retail Clerks will become the president of the combined organization and that Mr. Foreman will step into the same positions in it that he holds now with the Retail Clerks.

Mr. Foreman has decided not to act as the spokesman or representative of the merged union in any matter before the Department of Agriculture. In addition he has stated that he will refrain from participating in any matter in that union where necessary to avoid even the appearance of a conflict of interest for himself or his wife.

As for Ms. Foreman, she is of course a Presidential appointee. Her duties and powers are derived from formal delegations to her by the Secretary

of Agriculture of his authority under two clusters of statutes. One group, which is related to food safety and quality, charges the Secretary with the inspection, grading, and standardization of meat, poultry, eggs, dairy and other food products, the enforcement of standards for the humane slaughter of livestock, and the procurement of agricultural products and food for the school lunch program. 7 CFR 2.15(a). The second group, which is related to food and nutrition, requires the Secretary to administer the food stamp, school lunch and child-nutrition programs along with a number of others concerned with the distribution and donation of agricultural commodities and products. 7 CFR 2.15(b).

The Secretary's delegations are accompanied by a grant of power to Ms. Foreman to redelegate her authority to appropriate officers and employees. 7 CFR 2.7. In exercise of this power, she has in turn delegated all her functions under the two groups of statutes to the Administrator, Food Safety and Quality Service (FSQS), and the Administrator, Food and Nutrition Service (FNS), respectively. 7 CFR 2.92, 2.93. Although the two services thus carry on all the functions incident to her office, they nevertheless remain fully under her control because the Secretary's delegations to her are accompanied by a grant of authority to direct and supervise the employees of the two units. 7 CFR 2.7.

From this brief description of Ms. Foreman's jurisdiction it is apparent that the interests of the Meat Cutters component of the merged union, or its members, may on occasion be affected directly or indirectly by the actions of FSQS or FNS and that the union may become involved on behalf of that union in formal or informal proceedings before Ms. Foreman or the services. It is against this background that we consider the application of the pertinent conflict of interest statute and related administrative regulations.

The applicable conflict of interest law is 18 U.S.C. § 208, a criminal statute dealing with the conduct of a Government employee in his role as its servant or representative, as distinguished from his conduct in a private capacity. Section 208 does not disqualify anyone from holding a particular Government position; instead, it requires disqualification in certain governmental matters. Its restraint therefore comes into play on a case-by-case basis. In particular, subsection (a) of § 208 prohibits a Government employee from participating as such in any matter

> in which, to his knowledge, he, his spouse, minor child, partner,
> organization in which he is serving as officer, director, trustee,
> partner or employee, or any person or organization with whom
> he is negotiating or has any arrangement concerning prospective
> employment, has a financial interest.

The term "financial interest" is not defined.

It will be seen that although a Government employee who also has non-Government employment is barred by § 208(a) from participating in a matter in which his outside employer has a financial interest, he is not barred from a matter in which his spouse's employer has such an interest.

Therefore Ms. Foreman will not be disqualified by § 208(a) from a matter before her or her staff involving Mr. Foreman's new union unless it appears that he himself has a financial interest in the matter. Since he will be a salaried employee, it is unlikely that either the size of his salary or the continued existence of the position he occupies will be affected by any matter in Ms. Foreman's domain. However, if a situation did arise in which the outcome of a matter might have a direct and predictable effect on his income from the union or on any other personal financial interest, then Ms. Foreman would have to refrain from participating in it. *See, Federal Personnel Manual,* Ch. 735, App. C, at p. 4. It should be added that where a disqualifying financial interest is of an insignificant nature, the Government employee involved may receive a waiver under the provisions of § 208 (b). Accordingly, it would be possible for Ms. Foreman, in pursuance of the applicable Department of Agriculture procedures, to receive a waiver of a minor financial interest of her husband in a matter.

Executive Order No. 11222 of May 8, 1965, 3 CFR, 1965 Supp., picks up where 18 U.S.C. § 208 leaves off. It proscribes actions by Government employees that, although not necessarily running afoul of the statute, might result in, or create the appearance of, certain improprieties. Included are the use of public office for private gain, giving preferential treatment to any organization or person, and affecting adversely the confidence of the public in the integrity of the Government. § 201(c). The regulations of the Department of Agriculture repeat this admonition. 7 CFR 0.735–11.

It might be suggested that the mere association of Mr. Foreman with the Meat Cutters will create a problem of appearances for Ms. Foreman, not so much because of the public's fear of financial preference that is principally reflected in the Executive order and USDA regulations, but from the very fact of the marital relationship. However, Mr. Foreman's decision not to represent his union before the Department of Agriculture and not to participate in union matters where appearances of a conflict of interest might occur should dispel concerns of this nature because his noninvolvement will insure that he and Ms. Foreman do not participate in the same matter on behalf of potentially opposing entities.

For Ms. Foreman's part, she, along with her Department's ethics counsellor and on occasion perhaps the Secretary of Agriculture, will have to examine with a view toward the possible appearance as well as the reality of a conflict of interest each matter coming within the area of her responsibility in which the new union will be a party or otherwise advance an interest or express its views. If the disposition of a matter predictably may have a significant effect, whether beneficial or adverse, on the union's operations or financial position or on the livelihoods of an appreciable number of its members, we are of the opinion she should not participate. Self-disqualification may also be advisable on occasion in situations with less compelling facts. In considering such cases, Ms. Foreman and her colleagues should take into account, along with other

factors, the relative interest of the union in the matter when compared to that of other organizations or persons. In each instance where she determines not to take part in a matter, she should promptly make a record of that determination and make sure that her subordinates and all the parties and others known to have a formal interest in the matter are notified of her action.

The conclusions expressed above are consistent with the developing approach of the legal profession in applying ethical rules to the increasing number of cases in which husband-and-wife lawyers who are not practicing in association with each other find themselves or their law firms representing differing interests. The American Bar Association's Committee on Ethics and Professional Responsibility has issued an opinion on this subject, Formal Opinion 340 of September 23, 1975, which concludes that there is no *per se* rule prohibiting spouses from being employed by law firms with opposing interests in a matter. Rather, the opinion endorses a case-by-case approach, looking to such factors as whether one spouse's position may create a financial interest for the other and whether only one of the spouses will actually be working on the matter.

It might be added that Opinion 340 provides advice for Ms. Foreman even though she is not a lawyer. After stating that it "cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client's confidences," the Committee, however, went on to note that the "relationship of husband and wife is so close that the possibility of an inadvertent breach of confidence * * * is substantial." It cautioned husband-and-wife lawyers to guard against such inadvertences. The committee's comments are apt in relation to the situation of Ms. Foreman after the Retail Clerks and Meat Cutters merge. She should take every precaution not to compromise her Department's confidences in her conversations with her husband.

As the American Bar Association's Committee on Ethics found nothing inherently improper in the lawyer-wife's and lawyer-husband's representation of clients with adverse interests, so do we conclude that it would not be inherently improper for Ms. Foreman to perform her usual functions and exercise her usual powers in the Department of Agriculture with regard to a matter affecting the employer of her husband. Neither statutory law nor the executive policy of avoiding appearances of conflicts of interest justifies the conclusion that she must disqualify herself in every matter of that kind. What is required by the executive policy is care in deciding for or against recusal in each case.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

239